**17-cv-03424-DLC**

---

**United States District Court**

*for the*

**Southern District of New York**

---

SHINHAN BANK,

*Appellant*,

-against-

LEHMAN BROTHERS HOLDINGS INC. *and*

LEHMAN BROTHERS SPECIAL FINANCING INC.

*Appellee*.

---

ON APPEAL FROM THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK (CHAPMAN, J.)

IN RE LEHMAN BROTHERS INC. HOLDING CASE NO. 08-13555

---

**APPELLEE'S OPPOSITION
TO SHINHAN BANK'S APPEAL BRIEF**

---

WEIL, GOTSHAL & MANGES LLP
Christopher J. Cox *pro hac vice pending*
201 Redwood Shores Parkway
Redwood Shores, CA  94065
Telephone:  (650) 802-3100
Facsimile:  (650) 802-3000

WEIL, GOTSHAL & MANGES LLP
Jacqueline Marcus
767 Fifth Avenue
New York, New York  10153
Telephone:  (212) 310-8000
Facsimile:  (212) 310-8007

*Attorneys for Appellee Lehman Brothers Holdings Inc.
and
Lehman Brothers Special Financing Inc.*

## RULE 8012 CORPORATE DISCLOSURE STATEMENT

Pursuant to Rule 8012 of the Federal Rules of Bankruptcy Procedure, Lehman Brothers

Holdings Inc. ("LBHI," the "Plan Administrator," and "Appellee"), as Plan Administrator under

the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its*

*Affiliated Debtors* (the "Plan") for certain entities in the above-referenced chapter 11 cases, on

behalf of Lehman Brothers Special Financing Inc. ("LBSF"), states as follows:

No person directly or indirectly owns, controls, or holds 10% or more of any class of

LBHI's or LBSF's equity interests.

Dated:  June 5, 2017
    Redwood Shores, CA

                                         */s/ Christopher J. Cox*
                               Christopher J. Cox *pro hac vice pending*
                               WEIL, GOTSHAL & MANGES LLP
                               201 Redwood Shores Parkway
                               Redwood Shores, CA  94065
                               Telephone:  (650) 802-3100
                               Facsimile:  (650) 802-3100

                               Jacqueline Marcus
                               WEIL, GOTSHAL & MANGES LLP
                               767 Fifth Avenue
                               New York, New York  10153
                               Telephone:  (212) 310-8000
                               Facsimile:  (212) 310-8007

                               *Attorneys for Lehman Brothers Holdings*
                               *Inc. and Lehman Brothers Special*
                               *Financing Inc.*

## TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................................................. 1

STANDARD OF REVIEW ..................................................................................................... 2

QUESTION PRESENTED ....................................................................................................... 2

STATEMENT OF THE CASE ................................................................................................. 3

I.      STATEMENT OF FACTS ............................................................................................. 3

      A.      Motion to Dismiss in *LBSF v. Bank of America National Association*, Adversary Proceeding No. 10-03547 (Bankr. S.D.N.Y. Dec. 14, 2015) ............... 3

      B.      LBSF and Shinhan's ADR Negotiations, Settlement, and Subsequent Release Agreement Negotiation ........................................................................ 4

II.     PROCEEDINGS BELOW .............................................................................................. 7

ARGUMENT ......................................................................................................................... 7

I.      SHINHAN'S APPEAL RESTS ON AN INAPPROPRIATE CONFLATION OF THE SETTLEMENT AND THE RELEASE AGREEMENT ........................................ 7

II.     THE BANKRUPTCY COURT CORRECTLY RULED THAT THE PARTIES HAD A BINDING AND ENFORCEABLE SETTLEMENT AS OF APRIL 20, 2016 ....................................................................................................................... 9

      A.      Shinhan Intended To Be Bound By The Settlement ........................................... 10

            1.      The Bankruptcy Court Correctly Concluded That The Parties Did Not Include Any Reservation Of Rights In The April 20, 2016 Settlement ................................................................................................ 10

            2.      The Reservation Of Rights Language In The Release Agreement Does Not – And Cannot – Express An Intent Not To Be Bound By The Settlement ........................................................................................ 11

      B.      The Parties Agreed To All Material Terms ........................................................ 16

      C.      The Fourth *Winston* Factor Is Also Satisfied .................................................... 20

III.    HISTORICAL CONTEXT OF THE PARTIES' NEGOTIATIONS AND THE PENDING MOTION TO DISMISS .............................................................................. 21

CONCLUSION ...................................................................................................................... 25

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Robinson*,
 10 Civ. 7118 (SAS), 2011 U.S. Dist. LEXIS 120735 (S.D.N.Y. Oct. 19, 2011) ...................19

*Alvarez v. City of New York*,
 146 F. Supp. 2d 327 (S.D.N.Y. 2001)...........................................................................15, 21

*B. Lewis Prods. v. Angelou*,
 01 Civ. 0530 (MBM), 2005 U.S. Dist. LEXIS 9032 (S.D.N.Y. Apr. 26, 2005) .....9, 16, 17, 18

*Barclays Capital Inc. v. Giddens (In re Lehman Bros.)*,
 478 B.R. 570 (S.D.N.Y. 2012)......................................................................................13

*Estate of Brannon v. City of New York*,
 14-CV-2849 (AJN)(SN), 2015 U.S. Dist. LEXIS 145473 (S.D.N.Y. Oct. 19, 2015) ............24

*Ciaramella v. Reader's Digest Ass'n, Inc.*,
 131 F.3d 320 (2d Cir. 1997).........................................................................................14

*Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*,
 74 N.Y.2d 475 (N.Y. 1989) ....................................................................................17, 18

*Conception Bay, Inc. v Koenig Iron Works, Inc.*,
 27 Misc. 3d 1230(A) (N.Y. Sup. Ct. 2010) ......................................................................9

*Conway v. Brooklyn Union Gas Co.*,
 236 F. Supp. 2d 241 (E.D.N.Y. 2002) ...................................................................10, 16, 18

*Cruz v. OneSource Facility Servs.*,
 No. 03 Civ. 8233 (LAP), 2005 WL 2923517 (S.D.N.Y. Nov. 4, 2005)................................18

*Delyanis v. Dyna-Empire, Inc.*,
 465 F. Supp. 2d 170 (E.D.N.Y. 2006) ...........................................................................17

*Forden v. Bristol Myers Squibb*,
 63 F. App'x 14 (2d Cir. 2003) .....................................................................................18

*Hallock v. State*,
 64 N.Y.2d 224, 474 N.E.2d 1178, 485 N.Y.S.2d 510 (1984)................................................24

*Hanwha Corp. v. Cedar Petrochemicals, Inc.*,
 760 F. Supp. 2d 426 (S.D.N.Y. 2011).............................................................................19

*Hasson v. Motors Liquidation Co. GUC Trust,*
    2012 WL 1886755 (S.D.N.Y. May 21, 2012) (Sullivan, J.)......................................2

*Hostcentric Techs., Inc. v. Republic Thunderbolt, LLC,*
    No. 04 Civ. 1621(KMW)(AP), 2005 WL 1377853 (S.D.N.Y. June 9, 2005) ..................16, 18

*Johnson v. Fordham Univ.,*
    No. 11 Civ. 04670 (ALC), 2016 WL 450424 (S.D.N.Y. Feb. 4, 2016) ................................19

*Kaczmarcysk v. Dutton,*
    414 Fed. Appx. 354 (2d Cir. 2011) ......................................................................11, 14

*Kargo, Inc. v. Pegaso PCS, S.A.,*
    05 Civ. 10528 (CSH)(DFE), 2008 U.S. Dist. LEXIS 81888 (S.D.N.Y. Oct. 14, 2008).........12

*Milner v. City of New York,*
    10 Civ. 9384 (JGK) (GWG), 2012 U.S. Dist. LEXIS 108317 (S.D.N.Y. Aug. 2, 2012)........15

*In re Motor Liquidation Co.,*
    No. 11 Civ. 7893 (DLC), 2012 WL 398640 (S.D.N.Y. Feb. 7, 2012) ....................................2

*N. Fork Country, LLC v. Baker Publ'ns, Inc.,*
    436 F. Supp. 2d 441 (E.D.N.Y. 2006) ..................................................................16

*Olin Corp. v. Am. Home Assur. Co.,*
    704 F.3d 89 (2d Cir. 2012)...................................................................................13

*Omega Eng'g, Inc. v. Omega, S.A.,*
    432 F.3d 437 (2d Cir. 2005)..............................................................................9, 12

*Red Ball Interior Demolition Corp. v. Palmadessa,*
    173 F.3d 481 (2d Cir. 1999).................................................................................9

*SPCP Group, LLC v. Eagle Rock Field Servs., LP,*
    12 Civ. 3610 (PAC), 2013 U.S. Dist. LEXIS 12729 (S.D.N.Y. Jan. 30, 2013) .....................13

*Tractebel Energy Mktg. v. AEP Power Mktg.,*
    487 F.3d 89 (2d Cir. May 22, 2007) ...........................................................................19, 20

*Walker v. City of New York,*
    05-CV-0004 (JBW) (JMA), 2006 WL 1662702 (E.D.N.Y. June 15, 2006)...........................17

*Winston v. Mediafare Entm't Corp.,*
    777 F.2d 78 (2d Cir. 1985)..................................................................... *passim*

**Statutes**

Bankruptcy Code Section 105(a) ...................................................................................7

California Civil Code Section 1542 ....................................................................................14

**Other Authorities**

22 N.Y. Jur. 2d Contracts §§ 11, 13 ...................................................................................9

Federal Rules of Bankruptcy Procedure 8009 ....................................................................3

Federal Rules of Bankruptcy Procedure 8012 ....................................................................1

Federal Rule of Bankruptcy Procedure 8018(b)(2) ...........................................................1

Debtor-Appellee Lehman Brothers Holdings Inc. ("LBHI," the "Plan Administrator," and "Appellee"), as Plan Administrator under the *Modified Third Amended Joint Chapter 11 Plan of Lehman Brothers Holdings Inc. and Its Affiliated Debtors* (the "Plan") for certain entities in the above-referenced chapter 11 cases, on behalf of Lehman Brothers Special Financing Inc. ("LBSF" and, together with LBHI, "Lehman"), respectfully submits this brief in opposition to Appellant Shinhan Bank's ("Appellant" or "Shinhan") appeal from the Order of the United States Bankruptcy Court for the Southern District of New York (Chapman, B.J.), dated March 29, 2017, finding that an enforceable settlement exists between the parties.

## PRELIMINARY STATEMENT

LBSF and Shinhan had a binding settlement on April 20, 2016 when both parties accepted a mediator's proposal.  The agreed settlement was not complicated and had no contingencies; it involved payment of a single settlement amount and mutual releases of the parties.  As the Bankruptcy Court repeatedly observed, the April 20, 2016 settlement "is the simplest settlement that there could possibly be.  Pay money.  Get released. . . .  There's not a lot of moving parts here."  ECF No. 6 (Appendix to Brief for Appellant ("App.")) at 176-77 (Order at 10:25-11:4); *see also* App. 179 (Order at 13:5) (calling the settlement "super simple").[1]  The Bankruptcy Court's conclusion that there were no disputed essential terms as of the April 20, 2016 settlement date is fully supported by the undisputed facts.  *See* App. at 176, 195 (Order at 10:22-25; 29:13-30:5).

There is no dispute that this "super simple" settlement was reached while a motion to dismiss was pending in the underlying litigation, and thus reflected a compromise for both

---

[1] Pursuant to Federal Rule of Bankruptcy Procedure 8018(b)(2), an appellee may serve and file with its brief an appendix that contains material omitted by the appellant.  Here, Shinhan's Appendix to Brief for Appellant includes the relevant material and a separate appendix for Appellee would be unnecessarily duplicative.  Accordingly, all documentary citations herein are to Shinhan's Appendix.

parties given the uncertainty.  It is also undisputed that Shinhan only contended that there was no settlement *after* weeks and weeks of delay "occasioned solely by Shinhan and at Shinhan's request" (App. 182 (Order at 16:6-11)), *after* Shinhan insisted that Lehman sign and send two signed originals of a related release agreement to Korea, and *after* repeated assurances that Shinhan would return the fully executed release agreement and remit the settlement amount. Indeed, Shinhan confirmed that it would remit the settlement amount the same day that the Bankruptcy Court granted the pending motion to dismiss that would have absolved Shinhan of legal liability.  But Shinhan's change of heart came too late; by the time the Bankruptcy Court's order changed the legal landscape, the parties had already entered into an enforceable settlement. Shinhan's contention that the partially-executed "Release Agreement" gave it the unilateral option to bind Lehman if the motion to dismiss were denied, but void the separate settlement if the ruling fell in its favor reflects a patently inequitable (and unintended) result.

## STANDARD OF REVIEW

The Bankruptcy Court's conclusions of law are reviewed *de novo* by the District Court and findings of fact are reviewed for clear error.  *Hasson v. Motors Liquidation Co. GUC Trust*, 2012 WL 1886755, *3 (S.D.N.Y. May 21, 2012) (Sullivan, J.) (citation omitted); *see also In re Motor Liquidation Co.*, No. 11 Civ. 7893 (DLC), 2012 WL 398640, at *2 (S.D.N.Y. Feb. 7, 2012) ("Findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous.") (citation omitted).

## QUESTION PRESENTED

1.      Did the Bankruptcy Court correctly conclude that the parties had a binding and enforceable settlement?

2.      If the parties had a binding and enforceable settlement, did the Bankruptcy Court correctly conclude that the Release Agreement was also binding and enforceable against Shinhan?[2]

## STATEMENT OF THE CASE

### I.      STATEMENT OF FACTS

Virtually all of the facts have been stipulated to by LBSF and Shinhan and/or are a matter of public record on the Bankruptcy Court docket.  *See* App. 54-101 (the "Stipulation").  Briefly, this appeal involves two parallel, but intricately connected, series of events.  The first series of events concerns a motion to dismiss filed in an adversary proceeding in which Shinhan was a named defendant.  The second series of events – which occurred contemporaneously with the first – revolves around the parties' Court-ordered ADR negotiations, entry into a settlement to resolve the dispute between LBSF and Shinhan, subsequent swift finalization of a release agreement, and Shinhan's assurances up to its sudden change of heart.

### A.      Motion to Dismiss in *LBSF v. Bank of America National Association*, Adversary Proceeding No. 10-03547 (Bankr. S.D.N.Y. Dec. 14, 2015)

On September 14, 2010, LBSF filed an adversary proceeding in the Bankruptcy Court seeking to avoid, or "claw back," transfers of funds to Shinhan and hundreds of other noteholder defendants.  *See LBSF v. Bank of America National Association*, Adversary Proceeding No. 10-03547 (Bankr. S.D.N.Y.) (the "Adversary Proceeding").  Certain noteholders in the Adversary Proceeding filed a motion to dismiss on December 14, 2015 (the "Motion to Dismiss").  *See* Adv. Proc. No. 10-03547 [ECF No. 1195].  As of April 4, 2016, the Motion to Dismiss was fully

---

[2] As noted in Appellee's Counter-Designation of Additional Items to Be Included in the Record on Appeal (the "Counter-Designation") [ECF No. 5], LBHI disagrees with the statement of issues identified by Shinhan.  However, LBHI did not re-state the issues in the Counter-Designation because Rule 8009 of the Federal Rules of Bankruptcy Procedure does not provide for the filing of Appellee's statement of the issues absent a cross-appeal.  Therefore, Appellee reserved its right to re-state the issues on appeal in its appellate brief.  *See id.*

briefed and the Bankruptcy Court heard oral argument on May 4, 2016.  *See* Adv. Proc. No. 10-03547 [ECF No. 1308 and ECF No. 1342].  The Bankruptcy Court granted the Motion to Dismiss on June 28, 2016, dismissing LBSF's claims against, among others, Shinhan (the "BofA Order").  *See* Adv. Proc. No. 10-03547 [ECF No. 1360].[3]

The facts and legal claims in the Adversary Proceeding are irrelevant for purposes of the current appeal.  However, it is undisputed that at all relevant times both LBSF and Shinhan were aware of the procedural developments in the Adversary Proceeding, and those procedural developments informed the parties' settlement negotiations in the Court-ordered mediation, as discussed in more depth below.

**B.   LBSF and Shinhan's ADR Negotiations, Settlement, and Subsequent Release Agreement Negotiation**

After filing the Adversary Proceeding naming Shinhan, LBSF initiated an ADR proceeding with Shinhan on June 11, 2013 pursuant to the *Amended Order Providing for Alternative Dispute Resolution Procedures for Affirmative Claims of the Debtors Under Derivatives Transactions with Special Purpose Vehicle Counterparties* [App. 1-25] (the "Amended SPV ADR Order") by serving SPV Derivatives ADR Notice No. 902 (the "SPV ADR Notice").  On April 6, 2016 – *after* the Motion to Dismiss was fully briefed and awaiting oral argument at the Bankruptcy Court – LBSF and Shinhan engaged in mediation before the Honorable Ralph Mabey (the "Mediator") pursuant to the Amended SPV ADR Order.  App. 55 (Stipulation ¶ 1).  At the conclusion of the mediation, the Mediator proposed that the parties settle this matter by Shinhan paying LBSF a certain amount (the "Settlement Amount") in exchange for mutual releases.  App. 55 (Stipulation ¶ 2).

---

[3] Lehman filed a notice of appeal of the BofA Order on February 6, 2017.  Adv. Proc. No. 10-03547 [ECF No. 1403].  That appeal is currently pending before the Honorable Lorna G. Schofield of the United States Court for the Southern District of New York.  *See* Case No. 17-cv-1224-LGS (S.D.N.Y.).

On April 20, 2016, the parties each independently agreed to the Mediator's proposal, which contained all material terms of the settlement between the parties (the "Settlement"). App. 55, 61, 64 (Stipulation ¶ 3 and Stipulation Exs. A-B). Because LBSF had "routine settlement documentation," the Mediator asked LBSF to provide the documentation to Shinhan. App. 64 (Stipulation Ex. B).

On April 21, 2016, LBSF sent a draft agreement, entitled "Release Agreement" to Shinhan's counsel for review and comment. App. 56, 73 (Stipulation ¶ 4 and Stipulation Ex. C, p. 8). After the Motion to Dismiss hearing on May 4, 2016, Shinhan proposed changes to the Release Agreement on May 11, 2016. App. 56, 72 (Stipulation ¶ 5 and Stipulation Ex. C, p. 7). LBSF accepted all of Shinhan's proposed changes to the Release Agreement on May 12, 2016. App. 56, 71-72 (Stipulation ¶ 6 and Stipulation Ex. C, p. 6-7).

On May 19, 2016, Shinhan, through its counsel, requested that: (a) rather than sign in counterparts, LBSF send Shinhan two original, signed copies of the Release Agreement; and (b) LBSF provide a Board resolution and other documents establishing the LBSF and LBHI signatory's authority to sign the Release Agreement. App. 56, 69-70 (Stipulation ¶ 7 and Stipulation Ex. C, p. 4-5). On May 27, 2016, LBSF advised Shinhan's counsel that it had sent the requested materials to Shinhan, including the requested Board resolution and other documents, and two original, signed copies of the Release Agreement. *See* App. 56, 77, 86, 94, 98 (Stipulation ¶ 8 and Stipulation Exs. D-G). That same day, Shinhan's counsel: (a) acknowledged that LBSF had advised that it had sent the package to Shinhan; and (b) noted that Shinhan's counsel would advise Shinhan that "the package is on its way . . . ." App. 57, 69 (Stipulation ¶ 9 and Stipulation Ex. C, p. 4).

On June 14, 2016, in response to an inquiry from LBSF, Shinhan's counsel advised LBSF that "Shinhan is trying to get everything signed up and payment remitted by the end of this week." App. 57, 68 (Stipulation ¶ 10 and Stipulation Ex. C, p. 3). On June 17, 2016, Shinhan's counsel advised LBSF that, because some members of Shinhan's staff were out of the office, "Shinhan was not able to complete its internal approval process this week" and that "it looks like the week of June 27 is most likely for signature/payment." App. 57, 68 (Stipulation ¶ 11 and Stipulation Ex. C, p. 3).

At 10:39 a.m. on June 28, 2016, Shinhan's counsel advised LBSF that "Shinhan just confirmed that they have completed their internal approval process and the Settlement Agreement will be signed by Thursday June 30 (Korea time), after which they will remit the Settlement Amount." App. 57, 67 (Stipulation ¶ 12 and Stipulation Ex. C, p. 2). Several hours later, the Bankruptcy Court issued the BofA Order, dismissing LBSF's claims against, among others, Shinhan. App. 57-58 (Stipulation ¶ 14).

After the BofA Order was issued, Shinhan abruptly reneged on the Settlement and refused to return a signed copy of the Release Agreement that it had already negotiated, reduced to writing, and assented to.[4]

Rather than immediately file a motion to enforce the Settlement, LBSF made substantial efforts to resolve this dispute short of formal court proceedings, including written submissions to the Mediator, letter briefs to the Bankruptcy Court, and a January 10, 2017 informal conference with the Bankruptcy Court. Despite these substantial informal efforts – and the fact that every

---

[4] Notably, Shinhan is the ***only counterparty*** in the Lehman chapter 11 cases who reneged on a mediated settlement. Indeed, Shinhan's conduct here is at odds with almost twenty similarly situated counterparties who settled with LBSF before issuance of the BofA Order and followed through by signing release agreements and paying LBSF the agreed-upon settlement amounts following entry of the BofA Order.

neutral evaluator that has reviewed this particular set of facts and the law has advised Shinhan

that the parties have an enforceable Settlement and an enforceable Release Agreement – Shinhan

refuses to recognize its obligations to Lehman.

## II.    PROCEEDINGS BELOW

After Lehman's substantial efforts to resolve this dispute short of formal court

proceedings failed, on January 30, 2017, Lehman filed its *Motion Pursuant to the Amended SPV*

*ADR Order and Section 105(a) of the Bankruptcy Code to (I) Enforce Settlement and Release*

*Agreement and (II) Grant Attorneys' and Mediator's Fees and Costs* (the "Motion").

App. 26-54.  The Motion sought a court order enforcing both the Settlement and the Release

Agreement.  Shinhan filed a brief in opposition to the Motion (App. 102-142) and LBHI filed a

reply brief (App. 143-162).  The parties attended a hearing on March 21, 2017 before United

States Bankruptcy Judge Shelley C. Chapman.  At the conclusion of the hearing, Judge Chapman

read the Court's ruling into the record, finding "that the *Winston* factors on balance weigh in

favor of finding that an enforceable settlement exists between the parties, notwithstanding the

fact that Shinhan did not sign the release agreement."  App. 197-98 (Order at 31:22-32:3).

Thereafter, Judge Chapman entered the Order (App. 163-165), which also attached the transcript

from the March 21, 2017 hearing and associated ruling from the bench (App. 166-211).  Shinhan

filed a notice of appeal on April 11, 2017 (App. 212-264), and these appellate proceedings

followed.

## ARGUMENT

## I.    SHINHAN'S APPEAL RESTS ON AN INAPPROPRIATE CONFLATION OF THE SETTLEMENT AND THE RELEASE AGREEMENT

The Bankruptcy Court noted that "the real issue in this dispute is not the enforceability of

the [parties'] April 20th, 2016 settlement, but instead whether Shinhan can renege from the April

20th settlement, purportedly because it did not sign a document entitled 'release agreement.'" App. 194 (Order at 28:9-13).  The Bankruptcy Court categorically – and correctly – answered that question in the negative.

Shinhan's entire argument – both in the Bankruptcy Court and here on appeal – is based on the faulty premise that the "Release Agreement" was intended to be a memorialization of the parties' prior settlement negotiations, *i.e.*, it should be treated as a "Settlement and Release Agreement" rather than a "Release Agreement."  Thus, according to Shinhan, because the ***Release Agreement*** included reservation of rights language (*i.e.*, that the releases become effective upon signature and payment of the Settlement Amount) and because Shinhan did not sign the Release Agreement, the ***Settlement*** is unenforceable.  The Bankruptcy Court rejected this premise, stating:

> Only after this Court issued the Bank of America decision did Shinhan, for the first time, communicate that it was still evaluating its agreement with LBSF.  ***The intent manifest here is not the intent not to be bound absent a signed writing. Rather it is a change of heart and strategy following this Court's [BofA Order].***

App. 194 (Order at 28:14-19) (emphasis added).  As the Bankruptcy Court found, the binding Settlement and the Release Agreement were separate, bargained for agreements, and Shinhan's failure to sign the Release Agreement did not absolve it of the obligation to honor the separate, enforceable Settlement.

This finding is dispositive of the entire appeal.  If this Court upholds the Bankruptcy Court's finding that there was a valid, enforceable Settlement as of April 20, 2016 – and there is nothing in the undisputed record that could possibly undermine the Bankruptcy Court's finding on this issue – then Shinhan's remaining arguments fall apart.  As the Bankruptcy Court observed, "[i]t's super simple.  If the settlement agreement is upheld, there's going to be a payment of money and there are going to be releases.  That's it."  App. 185 (Order at 19:19-21).

## II.   THE BANKRUPTCY COURT CORRECTLY RULED THAT THE PARTIES HAD A BINDING AND ENFORCEABLE SETTLEMENT AS OF APRIL 20, 2016

"Settlement agreements are contracts and must therefore be construed according to general principles of contract law." *Red Ball Interior Demolition Corp. v. Palmadessa*, 173 F.3d 481, 484 (2d Cir. 1999). The requirements for formation of an enforceable contract under New York law are: "(1) at least two parties with legal capacity to contract; (2) mutual assent to the terms of an agreement with reasonably certain terms; and (3) consideration." *Conception Bay, Inc. v Koenig Iron Works, Inc.*, 27 Misc. 3d 1230(A) at *3 (N.Y. Sup. Ct. 2010); *see also* Restatement, Second, Contracts §§ 9, 12, 17; 1 Williston, Contracts (4th Ed) 200-09, § 3:2; 22 N.Y. Jur. 2d Contracts §§ 11, 13. An agreement may be enforced where it is "sufficiently 'definite and explicit so [that the parties'] intention may be ascertained to a reasonable degree of certainty.'" *B. Lewis Prods. v. Angelou*, 01 Civ. 0530 (MBM), 2005 U.S. Dist. LEXIS 9032, at *14 (S.D.N.Y. Apr. 26, 2005) (quoting *Best Brands Beverage, Inc. v. Falstaff Brewing Corp.*, 842 F.2d 578, 587 (2d Cir. 1987)). It is "an elementary principle of contract law that a party's subsequent change of heart will not unmake a bargain already made." *Omega Eng'g, Inc. v. Omega, S.A.*, 432 F.3d 437, 445 (2d Cir. 2005).

As a general matter, "parties are free to enter into a binding contract without memorializing their agreement in a fully executed document." *Winston v. Mediafare Entm't Corp.*, 777 F.2d 78, 80 (2d Cir. 1985). In determining whether parties intended to be bound by a settlement agreement, courts in the Second Circuit analyze four factors, none of which is dispositive: "(1) whether there has been an express reservation of the right not to be bound in the absence of a writing; (2) whether there has been partial performance of the contract; (3) whether all of the terms of the alleged contract have been agreed upon; and (4) whether the agreement at issue is the type of contract that is usually committed to writing." *Id.*

The guiding *Winston* factors easily demonstrate that the Settlement here was a binding, enforceable contract.  As the Bankruptcy Court ruled, three of the four *Winston* factors weighed in favor of an enforceable Settlement and, therefore, "the *Winston* factors on balance weigh in favor of finding that an enforceable settlement exists . . . ."  App. 197 (Order at 31:24-32:1).

**A.       Shinhan Intended To Be Bound By The Settlement**

1.       The Bankruptcy Court Correctly Concluded That The Parties Did Not Include Any Reservation Of Rights In The April 20, 2016 Settlement

The first *Winston* factor requires the court to analyze whether there was an express reservation of the right not to be bound in the absence of a signed writing.  *See Conway v. Brooklyn Union Gas Co.*, 236 F. Supp. 2d 241, 249 (E.D.N.Y. 2002).  The Bankruptcy Court correctly concluded that "[w]hen the parties accepted [the Mediator]'s settlement proposal on April 20th, 2016, neither party reserved the right to be bound by such settlement, only upon signature of an agreement."  App. 192 (Order at 26:23-27:1).  The Bankruptcy Court further found that "nothing in the [subsequent] correspondence between the parties suggests that Shinhan reserved the right to be bound to the April 20th, 2016 settlement only upon signature of an agreement."  App. 193 (Order at 27:1-4).

The Bankruptcy Court's conclusions are clearly supported by the undisputed factual record.  Neither Shinhan nor LBSF expressed a reservation of rights on April 20, 2016, when the parties entered into the Settlement, and nothing in the subsequent communications between the parties suggests that Shinhan reserved the right to be bound to the Settlement only upon the signing of a written settlement agreement or upon signing the Release Agreement.  *See* App. 61 (Stipulation Ex. A) (April 20, 2016 email from Brian Koosed); *see generally* App. 66-75 (Stipulation Ex. C).  Instead, Shinhan repeatedly stated that the parties had an agreement and that Shinhan would remit payment.  *See, e.g.*, App. 61 (Stipulation Ex. A) (April 20, 2016 email from

Brian Koosed) ("[W]e are pleased to report that Shinhan has agreed to accept."); App. 68

(Stipulation Ex. C at 3) (June 14, 2016 email from Brian Koosed) ("Shinhan is trying to get

everything signed up and payment remitted by the end of this week."), App. 68 (Stipulation Ex.

C. at 3) (June 17, 2016 email from Brian Koosed) ("it looks like the week of June 27 is most

likely for signature/payment."), and App. 67 (Stipulation Ex. C. at 2) (June 28, 2016 email from

Brian Koosed) (Shinhan "just confirmed that they have completed their internal approval process

and the [Release] Agreement will be signed by Thursday June 30 (Korea time), after which they

will remit the Settlement Amount.").

      Thus, as the Bankruptcy Court properly found, the undisputed facts demonstrate that the

Settlement did not include a reservation of rights, and Shinhan intended to be bound by the terms

of the Settlement, whether the Release Agreement was fully executed or not.[5]

      2.      The Reservation Of Rights Language In The Release
                Agreement Does Not – And Cannot – Express An Intent
                Not To Be Bound By The Settlement

      In support of its argument on this first *Winston* factor, Shinhan asserts that the "Second

Circuit has repeatedly held that similar [reservation of rights] language in draft settlement

agreements constitutes an express reservation of the right not to be bound without a fully signed

writing." Appellant's Brief at 21 (quoting *Ciaramella v. Reader's Digest Ass'n, Inc.*, 131 F.3d

320 (2d Cir. 1997) and *Kaczmarcysk v. Dutton*, 414 Fed. Appx. 354 (2d Cir. 2011)).[6] Yet, in

---

[5] Even if this Court rejects the Bankruptcy Court's finding that the April 20, 2016 Settlement is binding and enforceable, as further discussed herein, the undisputed facts coupled with the *Winston* factors also demonstrate that the parties clearly had reached a binding settlement before the BofA Order was issued on June 28, 2016.

[6] Shinhan hyperbolically claims that "***not a single one*** of the 319 New York Federal court decisions that have cited *Winston* since 1985 enforced an oral agreement where the parties' only draft agreement contained the kind of unequivocal language [in the Release Agreement]." Appellant's Brief at 3 (emphasis in original). This observation is premised on the ill-founded

support of its contention that the **_Settlement_** is unenforceable, Shinhan does not point to any

reservation of rights expressed on April 20, 2016 (because there was none) or later

correspondence.[7]  Instead, Shinhan argues that Sections 4-5 of the **_Release Agreement_** "are

dispositive" (_i.e._, they conclusively demonstrate a reservation of rights as to the Settlement).[8]

Appellant's Brief at 21.  Shinhan thus contends that these clauses retroactively reserve the right

not to be bound by the Settlement without a fully signed writing.  Appellant's Brief at 21-24.

But, the language in Sections 4-5 of the Release Agreement **_cannot_** undermine the parties'

already binding Settlement.  _Omega Eng'g, Inc._, 432 F.3d at 445 (stating it is "an elementary

principle of contract law that a party's subsequent change of heart will not unmake a bargain

already made.").  Further, the Bankruptcy Court correctly rejected Shinhan's interpretation of

Sections 4-5 of the Release Agreement, stating "Shinhan's reliance on such language is

misplaced.  This language simply means that LBSF's release automatically becomes effective

upon execution and payment, not that the April 20th, 2016 settlement itself will become effective

upon signing the release agreement and paying the settlement amount."  App. 193-94 (Order

at 27:23-28:2).

---

position that the Release Agreement was intended to be a memorialization of the Settlement.
That position finds no basis in the undisputed facts and was rejected by the Bankruptcy Court.

[7] Citing _Kargo, Inc. v. Pegaso PCS, S.A._, 05 Civ. 10528 (CSH)(DFE), 2008 U.S. Dist. LEXIS
81888 (S.D.N.Y. Oct. 14, 2008), Shinhan argues that "repeatedly inquiring about a
counterparty's signature confirmed that the parties' agreement was not binding until signed."
Appellant's Brief at 18, 26, 30.  But _Kargo, Inc._ is inapplicable under the undisputed facts of this
case because Lehman was not inquiring about Shinhan's execution of the Settlement, but rather
the Release Agreement.  As the Bankruptcy Court observed, "nothing in the [subsequent]
correspondence between the parties suggests that Shinhan reserved the right to be bound to the
April 20th, 2016 settlement only upon signature of an agreement."  App. 193 (Order at 27:1-4).

[8] Shinhan repeatedly refers to the "Release Agreement" as simply the "Agreement."  Yet,
Shinhan cannot somehow transform the nature of the Release Agreement by dropping the word
"Release" from its brief.  _Compare_ App. 77 (Stipulation Ex. D) _with_ Appellant's Brief at 1.

Shinhan's interpretation would also require the Court to read language out of the contract in order to give effect to its argument.  According to Shinhan, the Release Agreement is effective once it is executed by both parties.  Appellant's Brief at 32.  However, the Release Agreement clearly provides that the "***Release Agreement***" becomes effective upon both "execution" ***and*** "*payment . . . of the Settlement Amount* to Lehman."  App. 80 (Stipulation Ex. D § 5).  If the Court ascribes meaning to all of the language in Section 5, while attempting to credit Shinhan's argument that the Release Agreement was needed to effectuate the Settlement, the analysis inevitably leads to an absurd result.  Within this paradigm, both parties could execute the Release Agreement, but Shinhan could delay payment to LBSF indefinitely because the Release Agreement requires both execution and payment to be effective.  To get around this absurd result, Shinhan asks the Court to ignore the payment requirement in Section 5 and simply hold that the release is effective upon signing.  Yet, that would require the Court to write essential provisions of the Release Agreement out of the contract.  *Olin Corp. v. Am. Home Assur. Co.*, 704 F.3d 89, 99 (2d Cir. 2012); *see also Barclays Capital Inc. v. Giddens (In re Lehman Bros.)*, 478 B.R. 570, 586 (S.D.N.Y. 2012) ("Divining the parties' intent requires a court to 'give full meaning and effect to all of [the contract's] provisions.'"); *SPCP Group, LLC v. Eagle Rock Field Servs., LP*, 12 Civ. 3610 (PAC), 2013 U.S. Dist. LEXIS 12729, at *17 (S.D.N.Y. Jan. 30, 2013) ("The Court must avoid interpreting a contract in a manner that would be absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.") (internal quotation marks omitted).

As opposed to Shinhan's construction, and as found by the Bankruptcy Court, the Release Agreement simply memorializes the timing and mechanics for triggering the mutual releases and the timing of LBSF's obligation to dismiss Shinhan from the adversary proceeding

after payment of the Settlement Amount.  App. 193-94 (Order at 27:23-28:2).  Thus, the

Bankruptcy Court's interpretation of Sections 4 and 5 of the Release Agreement appropriately

gives meaning to all of its provisions without injecting new words and unintended meaning, as

Shinhan's interpretation would.  Indeed, the Release Agreement is entitled "Release Agreement,"

not "Settlement Agreement" or "Settlement and Release Agreement."[9]  App. 77 (Stipulation Ex.

D).  The title "Release Agreement" is consistent with the operative terms of the document; it

does not set forth the terms and conditions of the Settlement, but instead sets forth the ministerial

mechanics of how the release will become effective.  *See generally id.*  Indeed, not a single draft

of the Release Agreement (including the final, Lehman-executed version) includes the words

"settlement"[10] or "settlement agreement."  *Id.*  The pre-existing Settlement was a foregone

conclusion and did not even warrant specific discussion in the Release Agreement.  *Id.*

        Nor do the cases cited by Shinhan support its argument.  The facts in *Ciaramella* were

very different from this case.  In *Ciaramella*, there was a settlement "follow[ing] weeks of

bargaining over the draft settlement, which at all times clearly expressed the requirement that the

agreement be signed to become effective."  *Ciaramella*, 131 F.3d at 325.  That is not the case

here.  Similarly, the agreement at issue in *Kaczmarcysk* containing the reservations was the

proposed settlement agreement itself.  *See generally Kaczmarcysk*, 414 Fed. Appx. 354.

Consequently, the reservation of rights in *Kaczmarcysk* had a different meaning and intent than

Sections 4-5 of the Release Agreement in this case.

---

[9] Indeed, from the time Shinhan conspicuously wrote "we are pleased to report that Shinhan has agreed to accept" the Mediator's "***settlement*** proposal" (App. 61 (Stipulation Ex. A)), Shinhan treated the Settlement as a done deal.

[10] The Release Agreement does include one mention of "settlement," but it is merely a quotation of California Civil Code section 1542 (which governs general releases) – it is not a reference to the Settlement or indicative that the Release Agreement was intended to be a settlement agreement.  *See* App. 80 (Stipulation Ex. D § 7).

Last, Shinhan's repeated invocation of the merger clause to argue that the parties did not intend to be bound misses the mark.  *See* Appellant's Brief Response at 25-26.  As an initial matter, the merger clause has no effect here because the Release Agreement was not signed. Shinhan cannot have it both ways.  But even if the Court considers the merger clause, it still does not support Shinhan's contention that such a clause is evidence of the parties' intent not to be bound ***by the Settlement***; instead, the Release Agreement (and the merger clause) governed the release and dismissal of claims.  As the court noted in *Milner v. City of New York*, 10 Civ. 9384 (JGK) (GWG), 2012 U.S. Dist. LEXIS 108317, at *21 (S.D.N.Y. Aug. 2, 2012), "while a merger clause might provide some evidence of intent not to be bound in other circumstances, ***the situation here was far different because of the existence of a settlement that both parties had already agreed was 'binding.'***"  (Emphasis added); *see also Alvarez v. City of New York*, 146 F. Supp. 2d 327, 336 (S.D.N.Y. 2001) (stating "[i]n a typical case, such a [merger] clause would indicate that the parties only intended to be bound by a written agreement.  Under the unique circumstances of this case, however, the inclusion of the clause in the unexecuted stipulation has no such effect.  All parties at the June 13th conference knew and agreed that they would either accept or reject the settlement terms by informing the Court within a specific period.  Plaintiff communicated his acceptance within the stated period, and the settlement was reached.").  The facts here similarly establish that the parties' had already agreed to a binding Settlement; the inclusion of the merger clause in the later, separately negotiated Release Agreement cannot nullify that prior agreement.

15

## B.   The Parties Agreed To All Material Terms[11]

The third factor courts consider is whether the terms of the settlement have been agreed

upon.  *See Conway*, 236 F. Supp. 2d at 251 ("The fact that there was agreement to each term of

the settlement and that the parties recognized there were no additional terms remaining to be

negotiated, weighs heavily in favor of enforcement."); *see also Hostcentric Techs., Inc. v.*

*Republic Thunderbolt, LLC*, No. 04 Civ. 1621(KMW)(AP), 2005 WL 1377853, at *8 (S.D.N.Y.

June 9, 2005) (finding the third factor favored enforcement where "[t]he email exchange agreed

on payment amount and timing, removal of Hostcentric's property from the premises and a time

for that performance, mutual general releases and dismissal of the lawsuit with prejudice").

While mutual assent to reasonably certain terms is a prerequisite for contract formation

under New York law, "[c]ourts are cautioned not to turn the requirements of definiteness and

essential terms into a fetish" and, therefore, "[v]oiding an agreement for lack of essential terms

'is a step that courts should take only in rare and extreme circumstances.'"  *Angelou*, 2005 U.S.

Dist. LEXIS 9032, at *18 (quoting *Shann v. Dunk*, 84 F.3d 73, 81 (2d Cir. 1996).  "[P]arties also

should be held to their promises and courts should not be 'pedantic or meticulous' in interpreting

---

[11] The Bankruptcy Court found that the second *Winston* factor weighs against enforcing the
Settlement and the Release Agreement because neither LBSF nor Shinhan partially performed.
*See* App. 195 (Order at 29:9-12).  Appellee did not file a cross-appeal on this finding and,
therefore, will not address this factor in depth in this brief.  However, the undisputed record
demonstrates that LBSF undertook every single action requested by Shinhan until the moment
Shinhan reneged on the binding and enforceable Settlement.  The fact that Shinhan decided to try
to back out of the Release Agreement (and the Settlement) after the BofA Order was issued
cannot undermine LBSF's diligent and good faith conduct here.  *See N. Fork Country, LLC v.*
*Baker Publ'ns, Inc.*, 436 F. Supp. 2d 441, 446 (E.D.N.Y. 2006) (finding partial performance
where plaintiffs provided defendants with an updated accounts receivable statement and
submitted a proposed stipulation to defendants for their review and signature).  As the
Bankruptcy Court observed, this Settlement was "super simple."  App. 179 (Order at 13:5).
Accordingly, not much performance was needed from either side.  In fact, no performance was
needed from LBSF after it delivered the signed Release Agreement, as the releases were
automatic once Shinhan paid the Settlement Amount.  Therefore, the mere absence of
performance should not be the basis to conclude this Settlement is not binding and enforceable.

contract expressions." *Cobble Hill Nursing Home, Inc. v. Henry & Warren Corp.*, 74 N.Y.2d 475, 483 (N.Y. 1989); *see also id.* (stating "[t]he conclusion that a party's promise should be ignored as meaningless 'is at best a last resort.'") (quoting *Heyman Cohen & Sons, Inc. v. M. Lurie Woolen Co.*, 232 N.Y. 112, 114 (N.Y. 1921)).

Here, after reviewing the undisputed record, the Bankruptcy Court unequivocally found that the parties had agreed upon essential terms as of the April 20, 2016 Settlement.  According to the Bankruptcy Court, the April 20, 2016 Settlement "is the simplest settlement that there could possibly be.  Pay money.  Get released. . . .  there's not a lot of moving parts here." App. 176-77 (Order at 10:25-11:4); *see also* App. 179 (Order at 13:5) (calling the Settlement "super simple"); App. 176 (Order at 10:22-25) (rejecting Shinhan's oral argument that there were disputed essential terms in the Settlement).  There can be little doubt that the Settlement is "sufficiently definite and explicit so [that the parties'] intention may be ascertained to a reasonable degree of certainty."  *Angelou*, 2005 U.S. Dist. LEXIS 9032, at *14 (internal quotation marks omitted).

Nor is the Bankruptcy Court's finding aberrant in any way.  Courts routinely enforce settlement agreements in situations factually analogous to the present situation.  *See Delyanis v. Dyna-Empire, Inc.*, 465 F. Supp. 2d 170, 175 (E.D.N.Y. 2006) (enforcing oral settlement agreement where there was an "email to the mediator and [d]efendants' counsel . . . affirmatively stat[ing] that the case was settled and that the mediator could inform the Court of the settlement"); *see also Walker v. City of New York*, 05-CV-0004 (JBW) (JMA), 2006 WL 1662702, at *6 (E.D.N.Y. June 15, 2006) ("Under common law principles adopted by the federal courts, parties are free to enter into settlement without memorializing their agreement in a fully executed document, and such agreements are as enforceable as any other oral contract.");

17

*Hostcentric*, 2005 WL 1377853, at *4 ("[O]nce reached, a settlement agreement constitutes a

contract that is binding and conclusive and the parties are bound to the terms of the contract even

if a party has a change of heart between the time of the agreement to the terms of the settlement

and the time it is reduced to writing." (internal quotations omitted)); *id.* at *9 (enforcing

settlement agreement where parties exchanged emails containing all material terms).

Nevertheless, Shinhan invites this Court to engage in precisely the pedantic second

guessing of contract terms that established case law warns against. *See, e.g.*, *Cobble Hill*

*Nursing Home, Inc.*, 74 N.Y.2d 475, 483; *Angelou*, 2005 U.S. Dist. LEXIS 9032, at *18. But

neither the purported unsettled essential terms identified by Shinhan nor the case law cited by

Shinhan justify the "rare and extreme circumstance[]" of "[v]oiding [the Settlement] for lack of

essential terms . . . ." *Angelou*, 2005 U.S. Dist. LEXIS 9032, at *18. Instead, the case law cited

by Shinhan stands for the proposition that when there is an active disagreement as to essential

material terms as applied to those specific circumstances, there cannot be mutual assent. That is

most definitely not the case here – there has never been a dispute about any terms of the

Settlement, whether essential or not.[12]

For example, Shinhan cites *Forden v. Bristol Myers Squibb*, 63 F. App'x 14, 16 (2d Cir.

2003) and *Cruz v. OneSource Facility Servs.*, No. 03 Civ. 8233 (LAP), 2005 WL 2923517, at *3

(S.D.N.Y. Nov. 4, 2005) for the contention that a disagreement about the scope of a release

would prevent formation of an enforceable settlement. *See* Appellant's Brief at 15-16. But

---

[12] If the Court considers the terms of the Release Agreement, as opposed to the Settlement, even
Shinhan recognizes "that there were no open terms left for the parties to negotiate as of June 28,
2016, when the Bankruptcy Court issued its BofA Order . . . ." Appellant's Brief at 30-31.
Thus, as in *Conway*, 236 F. Supp. 2d at 251, the parties were in agreement as to *all* of the terms
of the Release Agreement – which was finalized, signed by Lehman, and delivered to Shinhan
with the understanding that Shinhan would countersign. This "weighs heavily in favor of
enforcement." *Id.*

Shinhan has identified nothing in the undisputed record – because there is nothing – suggesting that the parties had a disagreement about the scope of the release, either as of the April 20, 2016 Settlement or at any point thereafter.  Indeed, the Release Agreement was final once Lehman accepted all of Shinhan's proposed edits weeks before Lehman executed the Release Agreement at Shinhan's request.  Similarly, Shinhan cites *Hanwha Corp. v. Cedar Petrochemicals, Inc.*, 760 F. Supp. 2d 426, 433 (S.D.N.Y. 2011) for the proposition that parties who could not agree on a choice of law provision had not entered into a binding contract.  Appellant's Brief at 16. Again, Shinhan has identified no dispute, at any point, about the governing law.  Similarly, *Johnson v. Fordham Univ.*, No. 11 Civ. 04670 (ALC), 2016 WL 450424, at *5 (S.D.N.Y. Feb. 4, 2016) is cited for the proposition that the parties in that case had "no agreement on material terms because the scope of 'the non-disparagement and confidentiality provisions,' and how those provisions would be enforced, ***was unresolved***."  Appellant's Brief at 16 (emphasis added). Shinhan also contends that, pursuant to *Allen v. Robinson*, 10 Civ. 7118 (SAS), 2011 U.S. Dist. LEXIS 120735 (S.D.N.Y. Oct. 19, 2011), material terms "that require definition include time, manner of performance and payment schedule."  Appellant's Brief at 16.  Specific definitions of these terms might be necessary in a services contract like the one at issue in *Allen*, where the purported contract could have spanned as little as one year and as many as twenty-five and it was unclear what the manner of performance (*i.e.*, to "take care of" or "love and care") actually meant.  That is not the case in this "super simple" Settlement.  App. 179 (Order at 13:5).  Even *Tractebel Energy Mktg. v. AEP Power Mktg.*, 487 F.3d 89 (2d Cir. May 22, 2007), which purportedly stands for the proposition that "timing of and conditions for the [Release] Agreement's effectiveness" are material terms (*see* Appellant's Brief at 16), recognizes that "not all terms of a contract need be fixed with absolute certainty" and that a "contract is not

necessarily lacking in all effect merely because it expresses the idea that something is left to future agreement." *Tractebel*, 487 F.3d at 95 (internal citations and quotations omitted).  Here, there was no dispute, much less an unresolved one, as to a single essential term of the Settlement. The cases cited by Shinhan are simply inapposite – the material terms of the Settlement were both reasonably and absolutely certain.

> ### C.    The Fourth *Winston* Factor Is Also Satisfied

Finally, courts consider whether the agreement is a type usually committed to writing. *Winston*, 777 F.2d at 80.  As the Bankruptcy Court observed, the April 20, 2016 Settlement "is the simplest settlement that there could possibly be.  Pay money.  Get released. . . .  there's not a lot of moving parts here."  App. 176-77 (Order at 10:25-11:4); *see also* App. 179 (Order at 13:5) (calling the Settlement "super simple").  Thus, regardless of whether settlement agreements are usually committed to writing, there was no such need for this "super simple" Settlement. Further, Shinhan never made its approval of the Settlement contingent on a formal writing.  As discussed above, the Bankruptcy Court unequivocally found that Shinhan never reserved the right to be bound by the Settlement only upon a signature (much less a formal writing), either as of April 20, 2016 or at any point thereafter.  App. 192 (Order at 26:23-27:1) (finding no reservation of rights as of the April 20, 2016 Settlement) and App. 193 (Order at 27:1-4) (finding no reservation of rights in the subsequent correspondence).

But even assuming, contrary to the Bankruptcy Court's findings, that Shinhan should have expected a formal writing, here there was a substantially complete Release Agreement with agreed-upon terms that had been committed to writing.  Indeed, the parties had agreed upon the Release Agreement's terms and committed those terms to writing no later than May 12, 2016, when LBSF accepted all of Shinhan's proposed changes.  App. 56, 71-72 (Stipulation ¶ 6 and Stipulation Ex. C, p. 6-7).  Thereafter, on May 27, 2016, at Shinhan's request, LBSF sent

Shinhan two hard copies of the Lehman-executed, agreed-upon Release Agreement.  *See* App. 56, 77 (Stipulation ¶ 8 and Stipulation Ex. D).  Thus, at a minimum, the Release Agreement meets *Winston*'s "committed to writing" prong.  *Winston*, 777 F.2d at 80.  Indeed, the Release Agreement at issue here was significantly more complete than in *Alvarez*.  As the court stated in *Alvarez*:

> Defendants concede that the settlement agreement in this case is the type of agreement that is ordinarily written. Nonetheless, here there was a written settlement agreement that was substantially complete. The parties had extensively negotiated the language of the agreement, and only a couple of items remained. While the written agreement was not signed, the terms of the agreement had been largely reduced to writing. Hence, this factor weighs in favor of enforcing the agreement.

146 F. Supp. 2d at 337.  The Release Agreement here is even more complete than in *Alvarez*; it had been finalized, executed by Lehman, and sent to Shinhan.  Accordingly, this factor weighs heavily in favor of enforcing the Settlement even absent signatures on the Release Agreement. App. 196 (Order at 30:6-13).

## III.   HISTORICAL CONTEXT OF THE PARTIES' NEGOTIATIONS AND THE PENDING MOTION TO DISMISS

It is important to note that the Settlement and the parties' Release Agreement negotiations did not occur in a vacuum.  Throughout the Court-ordered mediation process, Settlement, and subsequent Release Agreement negotiations, the Motion to Dismiss was moving toward decision.  Below is a timeline of the relevant events:

- **December 14, 2015**:  The Motion to Dismiss was filed.

- **April 4, 2016**:  The Motion to Dismiss was fully briefed and awaited oral argument and disposition at the Bankruptcy Court.

- **April 20, 2016**:  The parties entered into the Settlement.

- **May 4, 2016**:  The Court heard oral argument on the Motion to Dismiss.

21

- **May 27, 2016**:  After Shinhan's delayed requests for additional documentation from LBSF, LBSF sent the Lehman-executed Release Agreement to Shinhan.

- **June 28, 2016**:  The Court issued the BofA Order, and thereafter Shinhan refused to honor the Settlement, execute the Release Agreement, and/or pay LBSF the Settlement Amount.

The Bankruptcy Court accurately characterized this timeline of events as "weeks and weeks of delay occasioned solely by Shinhan and at Shinhan's request."  App. 182 (Order at 16:6-11).  At oral argument, Shinhan conceded that this was an accurate depiction of the undisputed facts.  *See id.*

In light of the pending Motion to Dismiss proceedings, Shinhan's significant and unilateral delay takes on new import.  As of the April 20, 2016 Settlement, there can be no doubt that both LBSF and Shinhan were aware of the Motion to Dismiss, which was fully briefed. Shinhan certainly knew all of the legal arguments made by each side and knew that the disposition of the Motion to Dismiss had the potential to either (a) dismiss Shinhan from the adversary proceeding or (b) subject Shinhan to years of further litigation and, potentially, legal liability for the full amount claimed by LBSF.  Thus, as of the April 20, 2016 Settlement, the uncertainty of those outcomes undoubtedly factored into the parties' calculus when they decided to settle this dispute.

When LBSF sent the two, original, Lehman-executed Release Agreements to Shinhan, on May 27, 2016, Shinhan also knew that oral argument on the Motion to Dismiss had occurred more than three weeks earlier, on May 4, 2016.  Thus, when Shinhan induced LBSF to send it two original copies of the executed Release Agreement and while Shinhan held the Lehman-executed Release Agreement for the next month (from May 27, 2016 until the issuance of the

June 28, 2016 BofA Order),[13] Shinhan knew that a decision on the submitted Motion to Dismiss could – and would – issue at any time.

Shinhan's interpretation of the Release Agreement, which would allow Shinhan to bind LBSF while the parties waited for the BofA decision, while maintaining the unilateral ability to tear up both the Settlement and the Release Agreement at any point, places enormous, unfair, and unintended power in Shinhan's hands.  By entering into the Settlement and requesting an executed copy of the Release Agreement from LBSF, Shinhan minimized its risk.  If the Court denied the Motion to Dismiss (thereby ensuring that Shinhan would be involved in years of litigation through the adversary proceeding and, potentially, liable for the full amount claimed by LBSF), then Shinhan would benefit from a compromise settlement reached in part due to uncertainty surrounding the Motion to Dismiss.  In that circumstance, Shinhan would have undoubtedly countersigned the Release Agreement as repeatedly promised and paid LBSF the compromise Settlement Amount.  If, on the other hand, the Court granted the Motion to Dismiss (as actually happened), then Shinhan would have a free pass—it could tear up the Release Agreement and not pay a dime to LBSF.

Shinhan's "heads I win, tails you lose" interpretation is unsupported by the negotiation history and plain language of the Release Agreement, and the moral hazard[14] underlying Shinhan's argument clearly demonstrates that the parties could not have intended such a result when they entered into the Settlement and were finalizing the Release Agreement.  Allowing

---

[13] And this one-month delay occurred after Shinhan effectively had prolonged finalization of the Release Agreement by an additional month by (1) waiting three weeks to turn edits to the draft Release Agreement and (2) requesting additional documentation from LBSF.  *See* App. 69-73 (Stipulation Ex. C, p. 4-8).

[14] The economist Paul Krugman's definition of moral hazard is "any situation in which one person makes the decision about how much risk to take, while someone else bears the cost if things go badly."  Krugman, Paul (2009) *The Return of Depression Economics and the Crisis of 2008*.  W.W. Norton Company Limited.  ISBN 978-0-393-07101-6.

Shinhan to exercise this type of unilateral power would be inequitable. [15]  In this light, Shinhan's contention that it had a contractual right to its "change of heart" rings hollow.  *See* Appellant's Brief at 4.

Shinhan contends that the Order "undermine[s] basic principles of contract law" because it "substitut[es] the Bankruptcy Court's judgment as to when the deal was binding for the parties' judgment."  Appellant's Brief at 33-34.  Again, this argument improperly conflates the Settlement and the Release Agreement.  Moreover, Shinhan's position would impose significant uncertainty on the Court-ordered mediation process and the vitality of out-of-court settlements. As the Bankruptcy Court observed, Shinhan's actions "undercut[] . . . the purpose of engaging in mediation . . . ."  App. 196 (Order 30:20-22).  Courts in the Second Circuit and New York employ a "presumption in favor of enforcement [which] reflects the value that courts place on negotiated settlement agreements."  *Estate of Brannon v. City of New York*, 14-CV-2849 (AJN)(SN), 2015 U.S. Dist. LEXIS 145473, at *9 (S.D.N.Y. Oct. 19, 2015) (quoting *Willgerodt v. Hohri*, 953 F. Supp. 557, 560 (S.D.N.Y. 1997), *aff'd sub nom. Majority Peoples' Fund for 21st Century, Inc. v. Hohri*, 159 F.3d 1347 (2d Cir. 1998); *see also Hallock v. State*, 64 N.Y.2d 224, 230, 474 N.E.2d 1178, 485 N.Y.S.2d 510 (1984).  If courts are to place any value on negotiated settlement agreements, this Settlement and this Release Agreement must be enforced, as the Bankruptcy Court correctly ruled.

---

[15] The parties have not conducted discovery.  Therefore, Appellant does not know what was in Shinhan's mind during the weeks and weeks of delay while the Motion to Dismiss was pending. Thus, Appellant does not allege that Shinhan purposefully delayed executing the Release Agreement pending the outcome of the BofA Order.  Whether Shinhan's delay was intentional or not, however, is immaterial.  The parallel tracks of (1) the Motion to Dismiss and (2) the Court-ordered mediation, Settlement, and Release Agreement negotiations demonstrate that Shinhan's *post hoc* rationalizations provide Shinhan unintended and un-bargained for power.

**CONCLUSION**

For the foregoing reasons, the decision of the Bankruptcy Court finding that the

Settlement and the Release Agreement are enforceable should be affirmed.

Dated:  June 5, 2017
     Redwood Shores, CA

                                             _/s/ Christopher J. Cox_
                                   Christopher J. Cox *pro hac vice pending*
                                   WEIL, GOTSHAL & MANGES LLP
                                   201 Redwood Shores Parkway
                                   Redwood Shores, CA  94065
                                   Telephone:  (650) 802-3100
                                   Facsimile:  (650) 802-3100

                                   Jacqueline Marcus
                                   WEIL, GOTSHAL & MANGES LLP
                                   767 Fifth Avenue
                                   New York, New York  10153
                                   Telephone:  (212) 310-8000
                                   Facsimile:  (212) 310-8007

                                   *Attorneys for Lehman Brothers Holdings*
                                   *Inc. and Lehman Brothers Special*
                                   *Financing Inc.*